May 4, 2026

**VIA CM/ECF**

Clifton Cislak, Clerk of Court
U.S. Court of Appeals for the District of
Columbia Circuit
E. Barrett Prettyman U.S. Courthouse 333
Constitution Avenue, N.W.
Washington, D.C. 20001

**Re:** ***Doe v. SEC, No. 25-1152 (Argument Set for May 5, 2026)***

Mr. Cislak,

Petitioner John Doe respectfully submits this letter under FRAP 28(j) to call attention to this Court's Friday decision in *John Doe v. SEC*, No. 23-1124 (D.C. Cir. May 1, 2026), interpreting Section 21F(b)(1) of Dodd Frank and the regulations thereunder.

The statute requires that the Commission "shall pay an award or awards to … whistleblowers who voluntarily provided original information to the Commission" leading to a recovery. 15 U.S.C. §78u-6(b)(1). Commission Rule 21F-4(a) provides that "your submission of information to the Commission will be considered voluntary if you voluntarily provided the same information to one of the other authorities identified above prior to receiving a request, inquiry, or demand from the Commission." In *John Doe*, the Commission argued that disclosures to news media did not qualify under this rule, and this Court agreed, reasoning that "Rule 21F-4(a) considers 'voluntarily' *provided* those disclosures the whistleblower makes to the Commission or to proxy self-regulatory and

*governmental authorities* with which the Commission has relationships and cooperative arrangements producing referrals and sharing of high-quality information about securities violations." Slip op. 11-12 (emphasis added). The Court added "it does not matter whether a whistleblower submits the original information to the news media so long as the whistleblower also submits the same information to ... one of the proxies ...." *Id*.

This supports Petitioner's argument that he "provided" his "original information" to the Commission when he caused a massive trove of critical documents, including hundreds of pages of briefing material and meetings explaining those documents, to be delivered by his agent to the Justice Department. (Pet. Br. 4-8, 28). These disclosures led to an enforcement action when the Justice Department referred the matter to the Commission based on Petitioner's information. (Pet. Br. 6). *John Doe* highlights that delivery of original information to a "proxy" authority satisfies Dodd Frank's requirement that rewards be paid only to those who "voluntarily provided" information to the Commission. That supports Petitioner's argument that the word "provided" naturally encompasses indirect delivery, at least via "proxy" agencies who routinely share information and referrals with the Commission.

Respectfully submitted,

/s/ Eric Havian

Eric Havian
eric@whistleblower.law

Whistleblower Partners

www.whistleblower.law

WHISTLEBLOWER PARTNERS LLP
1 Embarcadero Center, Suite 1200
San Francisco, CA 94111
Tel: (415) 707-6855

# CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2026, I electronically filed the foregoing document with the Clerk of Court for the United States Court of Appeals for the District of Columbia Circuit using the CM/ECF system, which will effectuate service on counsel for the SEC.

Dated: May 4, 2026

/s/ Eric Havian

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued September 8, 2025 Decided April 17, 2026
Reissued May 1, 2026

No. 23-1124

JOHN DOE,
PETITIONER

v.

SECURITIES AND EXCHANGE COMMISSION,
RESPONDENT

---

On Petition for Review of an Order
of the Securities and Exchange Commission

---

*Stephen M. Kohn* argued the cause for petitioner. With him on the briefs were *Kayla Svihovec* and *Todd Yoder*. *David K. Colapinto* entered an appearance.

*Stephanie K. Glaberson* was on the brief for *amicus curiae* the Center on Privacy & Technology at Georgetown Law in support of petitioner.

*Margaux Ewen* was on the brief for *amici curiae* the Signals Network, et al. in support of petitioner.

*Joseph Slaughter* and *Neil L. Henrichsen* were on the brief for *amici curiae* Journalists, Editors, News Publishers, and Press Organizations in support of petitioner.

*Duane R. Gibson* and *Will Kramer* were on the brief for *amici curiae* RM, et al. in support of petitioner.

*Emily True Parise*, Senior Appellate Counsel, U.S. Securities and Exchange Commission, argued the cause for respondent. With her on the brief was *Tracey A. Hardin*, Solicitor.

Before: PILLARD and PAN, *Circuit Judges*, and ROGERS, *Senior Circuit Judge*.

Opinion for the Court by *Senior Circuit Judge* ROGERS.

ROGERS, *Senior Circuit Judge*: On the basis of information that John Doe disclosed about the misconduct of a large Company to the news media, the Securities and Exchange Commission successfully prosecuted an enforcement action against the Company. During the Commission's investigation, Congress and Commission staff contacted Doe for interviews and information about the disclosures to the news media, and Doe repeatedly obliged. On the basis of the same information, Doe filed an application with the Commission for a whistleblower award under the Securities Exchange Act of 1934, which authorizes the Commission to make monetary awards to individuals who "voluntarily" provide "original information" to the Commission, 15 U.S.C. § 78u-6(a), (b)(1); *see* 17 C.F.R. § 240.21F-4 ("Rule 21F-4"). The Commission denied Doe's application for an award because his submission was made only after the Commission had contacted him and thus was not "voluntarily" submitted under the statute and its

rules. Doe's submission was also untimely. The Commission summarily denied Doe's request for exemptions.

Doe petitions for review. He contends that instead of applying the plain statutory text and its precedent, the Commission acted in an arbitrary and capricious manner because its interpretation of "voluntarily" in Rule 21F-4(a) is contrary to common sense and the plain meaning and purpose of the term as well as dictionary definitions. Also, he maintains that his submission was timely. Alternatively, Doe contends that the denial of his request for exemptions was insufficiently explained and contrary to Commission precedent. Further, withholding financial rewards from whistleblowers due to their speech to the press, Doe maintains, raises questions under the First Amendment to the Constitution. Petitioner's Br. 24–28.

For the following reasons, Doe's challenges to the Commission's determination of his non-entitlement to a whistleblower award and to the Commission's interpretation of the statutory term "voluntarily" are unpersuasive. His First Amendment objection is based on a false premise. Doe's challenge to the Commission's denial of his request for an exemption from Rule 21F-4(a) is persuasive, however. In denying Doe's request for exemption from the voluntariness requirements, the Commission abused its discretion by perfunctorily restating the statutory policy goals in response to a credible showing that granting an exception would be "necessary or appropriate in the public interest," 15 U.S.C. § 78mm(a)(l), and consistent with the Commission's grant of exemptions in the past. Accordingly, the court denies the petition in part and grants it in part, vacating the denial of Doe's request for exemptions and remanding the request to the Commission for reconsideration.

## I.

In the aftermath of the 2008 financial crisis, Congress enacted the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"), PUB. L. NO. 111-203, 124 Stat. 1376 (2010) (codified in scattered sections of the U.S. Code.), "to promote stability in the U.S. financial system." *Nelson v. SEC*, 138 F.4th 514, 517 (D.C. Cir. 2025). The Dodd-Frank Act amended the Securities Exchange Act and, among other things, created a whistleblower program to provide incentives for individuals "with inside knowledge to come forward and assist the Government to identify and prosecute persons who have violated securities laws and recover money for victims of financial fraud." S. REP. NO. 111-176, at 110 (2010). Recognizing that whistleblower programs deliver superior outcomes compared to other means of oversight, Congress intended the whistleblower "program to be used actively with ample rewards to promote the integrity of the financial markets." *Id.* at 110–12.

Section 21F of the Securities Exchange Act provides, as relevant, that a whistleblower is eligible for an award if the individual "voluntarily provided original information to the Commission that led to the successful enforcement of the covered judicial or administrative action" that "results in monetary sanctions exceeding $1,000,000." 15 U.S.C. § 78u-6(a), (b)(1). The Commission is to "issue such rules and regulations as may be necessary or appropriate to implement" the whistleblower program and had discretion to determine "whether, to whom, or in what amount to make awards." *Id.* §§ 78u-6(f), (j), 78mm(a)(1). In adopting rules, *see* Securities Whistleblower Incentives and Protections, 76 Fed. Reg. 34,300 (June 13, 2011) ("Final Rule"), the Commission defined "voluntarily," 15 U.S.C. § 78u-6(b)(1), to require an individual to "provide your submission *before* a request, inquiry, or

demand that relates to the subject matter of your submission is directed to you or anyone representing you . . . [b]y the Commission" or other designated investigative authorities, including Congress, any other authority of the federal government, a state Attorney General or securities regulatory authority, or self-regulatory organizations. 17 C.F.R. § 240.21F-4(a)(1) (emphasis added). A whistleblower's "submission of information to the Commission will be considered "voluntarily" made if the whistleblower "voluntarily provided the same information" to one of the listed authorities "*prior to* receiving a request, inquiry, or demand from the Commission." *Id.* § 240.21F-4(a)(2) (emphasis added). The manner and form of submission was addressed in Rule 21F-9, requiring, for eligibility to receive a whistleblower award, submission of information on a "Tip, Complaint, or Referral" form ("Form TCR") within thirty days of first providing the original information, *id.* § 240.21F-9(a), (e).

The Commission does not dispute that Doe provided "original information" that led to an enforcement action resulting in more than $1 million in monetary sanctions. Neither does the Commission contest Doe's position that he would be entitled under its precedent to an exemption from the manner and form requirements under Rule 21F-9 were he found to be "an otherwise qualified whistleblower." Petitioner's Br. 50 (citation omitted) & n.10; Respondent's Br. 49 n.11. Rather, the Commission disputes Doe's eligibility for a whistleblower award because his submission of information about the Company's misconduct was not made "voluntarily" since it occurred after the Commission and certain other authorities contacted him. Respondent's Br. 22, 24; Order Determining Whistleblower Award Claims at 8–10, Exchange Act Release No. 97228 (Mar. 31, 2023) ("Award Order").

Based on the Enforcement staff's review of the news reports relying on information from Doe about potential misconduct by the Company, the Commission opened an investigation. A few days after the disclosure, a congressional committee wrote to request that Doe appear for an interview and provide documents in connection with the reported misconduct; Doe obliged on several occasions. In the following months, the Commission contacted Doe for the first time to request that its staff be included in an interview Doe was scheduled to have with other enforcement agencies. Several months after the initial disclosure to the media, Doe had his first interview with the Commission's Enforcement staff. Thereafter, until Doe hired new counsel in connection with the Commission's whistleblower proceedings, Doe did not respond to further requests for information or contact the Commission. According to Doe, only new counsel mentioned his potential eligibility for a whistleblower award. More than eleven months after the first contact by the Commission staff, Doe submitted information on Form TCR. The Commission subsequently interviewed Doe again, and he submitted supplemental information on Form TCR.

Later that year, the Commission posted on its public website a Notice of Covered Action relating to its enforcement action against the Company that was the subject of Doe's submission. This triggered a ninety-day period for eligible applicants to file applications for whistleblower awards. *See* 17 C.F.R. § 240.21F-10(a). In response, Doe submitted an application for an award based on the original information he provided to the Commission about the Company's misconduct. The Claims Review staff issued a Preliminary Determination ("PD") recommending that Doe's application for an award be denied: (1) Doe's submission was not "voluntarily" made under Section 21F of the statute and Rules 21F-3 and 21F-4(a)(1), because "[b]efore submitting information to the

Commission," Doe "was contacted initially by the Commission staff and other federal agencies and regulators in the underlying investigation," and (2) Doe's submission of information about the Company on the Form TCR was untimely. PD at 2 & nns. 3, 5.

Doe contested the reasons for the recommended denial. He argued that the Commission's definition of "voluntarily" conflicts with the statutory meaning of an "original source" of the information, 15 U.S.C. § 76u-6(a)(3). He also argued that he had timely submitted the information on the required form upon learning of his statutory rights. In the alternative, Doe requested that the Commission to exercise its exemption authority to waive the "voluntarily" and manner and form requirements and grant him an award: (1) his initially disclosing the Company's misconduct "to the news media, cooperating with the subsequent investigations, [and] testifying in public proceedings . . . achieved the precise aim of the" Dodd-Frank Act, and (2) the Commission had granted waivers in similar circumstances in the past. Appeal and Written Response ("Admin. Appeal") at 19–20.

The Commission affirmed the denial, elaborating on the reasons in the PD in response to Doe's objections. In a footnote, the Commission denied Doe's request for an exemption from the voluntariness requirement, stating:

> One of the principal objectives of Section 21F of the [Securities] Exchange Act is to promote effective enforcement of the federal securities laws by providing incentives for persons with knowledge of misconduct to come forward and share their information with the Commission. Granting an exemption under these circumstances is inconsistent

> with the statutory purpose of incentivizing whistleblowers to come forward early.

Award Order at II.A.i. & n.26 (citations and quotation marks omitted). As to the timeliness of Doe's submission under Rule 21F-9, the Commission concluded that "[t]he circumstances here do not warrant invoking [a] Section 36(a) [exemption]" under the Securities Exchange Act. *Id.* at 11 n.29. Doe petitions the court for review.

**II.**

The Commission's decision to grant or deny a whistleblower award may be set aside by the court only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A); *see* 15 U.S.C. § 78u-6(f). The court, however, is to exercise "independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). By contrast, the court's review of the Commission's denial of an exemption from the requirements of a statute that Congress has assigned it to implement, is "highly deferential"; the court may set aside the Commission's action only if "the agency's reasons are so insubstantial as to render that denial an abuse of discretion." *Copley Fund, Inc. v. SEC*, 796 F.3d 131, 135 (D.C. Cir. 2015) (quoting *Universal City Studios LLLP v. Peters*, 402 F.3d 1238, 1242 (D.C. Cir. 2005)). The Commission's factual findings are "conclusive" when "supported by substantial evidence." 15 U.S.C. § 78y(a)(4); *Steadman v. SEC*, 450 U.S. 91, 96 n.12 (1981). Upon review, it suffices if the court "can discern the why and wherefore" of the Commission's denial of an exemption. *ICBC Corp. v. FCC*, 716 F.2d 926, 929 (D.C. Cir. 1983) (citation and quotation marks omitted).

**A.**

Under Commission Rule 21F-4(a), "voluntarily" submitted information is any information furnished to certain federal and state authorities as well as self-regulatory organizations with which the Commission coordinates oversight and enforcement of securities laws, *viz*. "the Public Company Accounting Oversight Board, or any self-regulatory organization; or . . . Congress, any other authority of the Federal government, or a state Attorney General or securities regulatory authority." 17 C.F.R. § 240.21F-4(a)(1)–(2). That is, the Commission will treat "original information" as "voluntarily" submitted if the whistleblower submits it to any of these authorities "*before* a request, inquiry, or demand." *Id.* § 240.21F-4(a)(1) (emphasis added). In proposing the Rule, the Commission stated that "[t]his approach is consistent with the statutory purpose of creating a strong incentive for whistleblowers to come forward early with information about possible violations of the securities laws rather than wait until Government or other official investigators 'come knocking on the door.'" *Proposed Rules for Implementing the Whistleblower Provisions of Section 21F of the Securities Exchange Act of 1934*, 75 Fed. Reg. 70,488, 70,490 (Nov. 17, 2010) (quoting S. REP. NO. 111-176, at 110).[1]

---

1. Commission Rule 21F-4(a) defines "Voluntary submission of information," stating:

> (1) Your submission of information is made voluntarily within the meaning of §§ 240.21F-1 through 240.21F-17 of this chapter if you provide your submission *before* a request, inquiry, or demand that relates to the subject matter of your submission is directed to you or anyone representing you (such as an attorney):
>
> (i) By the Commission;

Doe nevertheless contends that the submission to the news media of "original information," 15 U.S.C. § 78u-6(a)(3),

---

(ii) In connection with an investigation, inspection, or examination by the Public Company Accounting Oversight Board, or any self-regulatory organization; or

(iii) In connection with an investigation by Congress, any other authority of the Federal government, or a state Attorney General or securities regulatory authority.

(2) If the Commission or any of these other authorities direct a request, inquiry, or demand as described in paragraph (a)(1) of this section to you or your representative first, your submission will not be considered voluntary, and you will not be eligible for an award, even if your response is not compelled by subpoena or other applicable law. However, your submission of information to the Commission will be considered voluntary if you voluntarily provided the same information to one of the other authorities identified above *prior to* receiving a request, inquiry, or demand from the Commission.

(3) In addition, your submission will not be considered voluntary if you are required to report your original information to the Commission as a result of a pre-existing legal duty, a contractual duty that is owed to the Commission or to one of the other authorities set forth in paragraph (a)(1) of this section, or a duty that arises out of a judicial or administrative order.

17 C.F.R. § 240.21F-4(a) (June 13, 2011) (emphases added).

qualifies as "voluntarily" providing it to the Commission, *id.* § 78u-6 (b)(1). Petitioner's Br. 38. He points to the Securities Exchange Act's definition of "original information" under which information may qualify as "original" if it is "derived from the independent knowledge or analysis of a whistleblower" and "not exclusively . . . from an allegation made in a judicial or administrative hearing, in a governmental report, hearing, audit, or investigation, or from the news media" — so long as the whistleblower is "a source of the information." *Id.* § 78u-6(a)(3)(A), (C). Doe maintains, therefore, that the statutory definition of "original information" gives whistleblowers a "statutory right to disclose to the news media." Petitioner's Br. 38 (capitalization modified). And he contends that, in any event, the Commission acted arbitrarily and capriciously in excluding the news media from the list of entities in Rule 21F-4(a) to which whistleblowers could "voluntarily" submit information. *Id.* 39–43.

Nothing in the text of the Securities Exchange Act indicates that the list of entities in Rule 21F-4(a) should mirror the statutory "original source" definition, and Doe cites no source that commands such a relationship. The "original information" and voluntariness requirements serve different purposes. The requirement that the whistleblower's information is "original" does not address the manner in which the information is to be submitted to the Commission (*i.e.*, "voluntarily"); instead, it addresses the permissible sources of that information. The two requirements are compatible: it does not matter whether a whistleblower submits the original information to the news media so long as the whistleblower *also* submits the same information to the Commission (or one of the proxies listed in Rule 21F-4(a)) *before* the Commission (or proxy) contacts the whistleblower. 15 U.S.C. § 78u-6(b)(1). Furthermore, Rule 21F-4(a) considers "voluntarily" provided those disclosures the whistleblower makes to the

Commission or to proxy self-regulatory and governmental authorities with which the Commission has relationships and cooperative arrangements producing referrals and sharing of high-quality information about securities violations. *See* 76 Fed. Reg. at 34,307–09 & nns. 74 & 81. The news media lacks such a formal relationship with the Commission. The Commission, therefore, could reasonably conclude that making a disclosure to the news media would not fulfill Dodd-Frank's "core objective" to "motivate people who know of securities violations to tell the [Securities and Exchange Commission]." *Digit. Realty Tr., Inc. v. Somers*, 583 U.S. 149, 162 (2018) (emphasis omitted) (quoting S. REP. No. 111-176, at 38).

Doe also contends that the regulatory definition of "voluntary" must include disclosures initially made to the news media because in enacting the "original information" carve-out in the Dodd-Frank whistleblower program, 15 U.S.C. § 78u-6(a)(3)(C), Congress "followed the precedent set when it passed the [Internal Revenue Service ("IRS")] whistleblower law in 2006," which allows for awards to whistleblowers who disclosed original information regardless of whether they first disclosed it to the news media. Petitioner's Br. 39. Doe points to the provisions in the IRS statute qualifying the whistleblower for a discretionary award when the IRS prosecutes an action based on "disclosures of specific allegations . . . resulting from a judicial or administrative hearing, from a governmental report, hearing, audit, or investigation, or from the news media," 26 U.S.C. § 7623(b)(2)(A), and for a mandatory award when the "information . . . was originally provided by" the whistleblower, *id.* § 7623(b)(2)(B).

That the Dodd-Frank whistleblower program was "modeled after a successful IRS Whistleblower Program enacted into law in 2006," S. REP. NO. 111-176, at 111, is not

the same as the claim that the Dodd-Frank program imported the entirety of the IRS Whistleblower Program's requirements. For instance, the IRS whistleblower program does not include a voluntariness requirement, 26 U.S.C. § 7623(b), indicating that when Congress included a voluntariness requirement in the Dodd-Frank whistleblower program it intended to depart in that provision from the IRS Whistleblower Program. Doe notes that a 2006 policy statement acknowledging "[e]ffective journalism complements the Commission's efforts" was quoted in the Commission's enforcement manual, Petitioner's Br. 40 (quoting SEC Enforcement Manual at 39 (Nov. 28, 2017); the acknowledgement is consistent with the Commission's rules, which do not penalize media disclosures made simultaneously with or after disclosures to the Commission.

On appeal, Doe also contends that the "plain meaning" of "voluntarily" in the Securities Exchange Act, 15 U.S.C. § 78u-6(b)(1), which Congress did not define, means "[a]cting, or done, of one's own free will without valuable consideration . . . or . . . any present legal obligation to do the thing done. . . ." Petitioner's Br. 32 (citation omitted) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2564 (1981) (definition 1(g)). So, in Doe's view, the Commission's interpretation is contrary to the statute because it excludes any "original information" that was "requested" even if the individual who responds had no obligation to do so. *Id.* at 33. Because Doe never raised this plain-meaning challenge to Rule 21F-4(a) before the Commission and offers no reasonable explanation for not doing so, it is forfeit. 15 U.S.C. § 78y(c)(1); *Springsteen-Abbott v. SEC*, 989 F.3d 4, 7 (D.C. Cir. 2021).

Doe's plain-meaning argument before the Commission was that the failure to include news media in the carve-out in

Rule 21F-4(a) contravened the statutory text because the definition of "original information" includes the news media. Admin. Appeal at 5–13; *contra* Reply Br. 6–7. That argument presumed the correctness of the Rule's interpretation of "voluntarily" as meaning unrequested or unprompted rather than done willingly — the interpretation Doe challenges for the first time on appeal. Doe failed to put the Commission "on notice," *Nelson*, 138 F.4th at 525, of this (other) plain-meaning argument and does not offer a "reasonable ground for failure to do so." 15 U.S.C. § 78y(c)(1). Doe's reliance on the Supreme Court's decision in 2024 in *Loper Bright*, Reply Br. 10 (citing 603 U.S. at 374, 400), is misplaced; the question of whether the Commission's interpretation will receive deference by the court on appeal is irrelevant to Doe's arguments before the Commission. Absent due notice to the Commission, Doe cannot pursue his (other) plain-meaning argument on appeal.

Doe maintains that because the Commission has "made known . . . its general views" on voluntariness, it would have been futile to raise the issue before the Commission. Reply Br. 8 (internal quotation marks omitted). He points to the Order Determining Whistleblower Award Claims at 10 & n.21, Exchange Act Release No. 84046, Whistleblower Award Proceeding File No. 2018-11, (Sep. 6, 2018), where the Commission rejected a whistleblower's view that information was submitted "voluntarily" because it was done "of [the whistleblower's] own free will[.]" *Id.* This court has held that a litigant has "reasonable ground" for failure to exhaust under 15 U.S.C. § 78y(c)(1) where doing so would have been "clearly useless." *KPMG, LLC v. SEC*, 289 F.3d 109, 118 (D.C. Cir. 2002) (quoting *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 105–06 (D.C. Cir. 1986)). But, "a mere losing position" is "insufficient" to meet that standard where a litigant fails to specify circumstances showing why

exhaustion would be futile. *Id.* Doe fails to meet this standard.

First, the Commission's rejection of another whistleblower's similar reading of the voluntariness requirement in an unrelated award order is insufficient to show that it would have been "clearly useless" for Doe to raise his argument before the Commission. Second, it is unclear how Doe could have known when he failed to exhaust that the Commission would argue in *Ross v. SEC*, 34 F.4th 1114 (D.C. Cir. 2022), against the position he now advances, so that development cannot support his futility argument. Reply Br. 9, 14 (citing briefing in *Ross*). Third, Doe's suggestion that the Commission's consideration of alternative definitions of "voluntarily" during the rulemaking shows it "cannot claim to have been surprised" by the challenges he makes on appeal or "claim to not have had the chance to address them," Reply Br. 7 (citing 75 Fed. Reg. at 70,490; 76 Fed. Reg. at 34,306 n.54), fares no better. In his appeal of the Preliminary Determination, Doe asserted that "the news media was the *only* entity for which original information could be submitted that was omitted from the so-called 'knocking' rules exception. . . ." *Id.* at 6 (quoting Admin. Appeal at 12). That the Commission considered the scope of its Rule is not the same as considering the plain meaning of "voluntarily." Doe's reliance on *Blount* v. *SEC*, 61 F.3d 938 (1995), is similarly misplaced; this court held that a petitioner's "general constitutional objections" on a direct rulemaking challenge were exhausted because the objections were not "in any salient way different from the concerns raised [by others] and considered during rulemaking." *Id.* at 940–41.

**B.**

Because the court affirms the denial of Doe's petition on the ground that his submission was not made "voluntarily," and the Commission has not contested Doe's position that an "otherwise qualified" applicant for a whistleblower award would be exempted from the manner and form requirements of Rule 21F-9, *supra* (citing Respondent's Br. 49 n.1), the court does not reach the Commission's alternative untimeliness ground for denial. *See Ross*, 34 F.4th at 1121.

**C.**

To Doe, the Commission "actions that disincentivize, punish, or penalize expressions of speech without specific and compelling justification raise First Amendment concerns as such actions can create a 'chilling effect' on future speech." Petitioner's Br. 55. After all, the government "may not deny a benefit to a person on a basis that infringes . . . constitutionally protected interests — especially, interest in freedom of speech." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). Specifically, Doe contends that the Commission's rules "[b]y denying awards to whistleblowers based on the initial reporting of their allegations to the press," create "a chilling effect on the willingness of future whistleblowers to work with the news media." Petitioner's Br. 56.

But whether Doe had initially disclosed the information about the Company's misconduct to the media was irrelevant to the Commission's determination of whether Doe's submission of an application for a whistleblower award was "voluntarily" made under the Securities Exchange Act and the Final Rule. The Commission's stated rationale in rejecting Doe's conflation of the distinct statutory requirements of coming forward "voluntarily" and providing "original

information" is founded on statutory text and purpose. Award Order at II.A.i. & n.26. The Commission denied Doe's submission because of his failure to "voluntarily" tell the Commission, not because he told the press. Nothing in the statute or rules prevented him from doing both at the same time or telling the Commission first, and then the press. Because the Commission denied Doe's whistleblower application for failure to submit the "original information" to the government before the government contacted him, Doe's constitutional challenge fails.

## III.

Section 36(a) of the Securities Exchange Act grants the Commission authority to exempt whistleblowers from compliance with statutory provisions if "such exemption is necessary or appropriate in the public interest, and is consistent with the protection of investors." 15 U.S.C. § 78mm(a)(l). Doe contends that the Commission abused its discretion in denying his request for an exemption from the voluntariness requirement by failing to provide an adequate explanation and to follow its precedent "provid[ing] exemptions in cases involving far less voluntary disclosures." Petitioner's Br. 27.

Before the Commission, Doe adduced a wealth of credible information suggesting that granting an exemption would be consistent with "public interest" and "protection of investors." 15 U.S.C. § 78mm(a)(l). Indeed, the Commission does not dispute that Doe provided the critical original information on which the Commission relied in pursuing a significant and successful enforcement action. Doe met with the Commission on two occasions, and in advance the Commission staff emphasized that their requests sought his "voluntary" cooperation. Application for Award (attaching emails between the Commission and Doe's Counsel) at 3–4.

In challenging the Preliminary Determination, Doe pointed out that "[b]y disclosing the [misconduct] to the news media, cooperating with the subsequent investigations, testifying in public proceedings, and updating the government with newly discovered critical information, [he] achieved the precise aim of the" Dodd-Frank Act. Admin. Appeal at 20. Doe also argued that the denial of an award in these circumstances would discourage others from coming forward, defeating the public interest. *Id.* at 18. Furthermore, Doe identified other cases in which the Commission waived the voluntariness requirement. Petitioner's Br. 44–45 (citing Order Determining Whistleblower Award Claim at 1, Exchange Act Release No. 72727 (July 31, 2014) & Order Determining Whistleblower Award Claim at 2, Exchange Act Release No. 86010 (June 3, 2019)).

Despite the substantial evidence of Doe's cooperation, the Commission summarily disposed of his exemption request in a footnote, stating only that granting his request for an award would be "inconsistent with the statutory purpose of incentivizing whistleblowers to come forward early" and "share their information with the Commission." Award Order at II.A.i. n.26 (internal quotation marks omitted). The Commission did not address its precedent that Doe identified. Merely "[s]tating that [something, such as pre-contact submission] is an existing requirement does not answer . . . argument that this is one of those circumstances in which it should be waived." *Gas Transmission Nw. Corp. v. FERC*, 363 F.3d 500, 503 (D.C. Cir. 2004). Because the Commission's statement of general policy goals does not enable the court to determine "the why and wherefore" of the Commission's denial of Doe's request for exemptions, *ICBC Corp.*, 716 F.2d at 929 (citation omitted), its reasoning is "so

insubstantial" that it fails even the highly deferential standard in *Copley Fund, Inc.*, 796 F.3d at 135.

The Commission may not need to address every argument and all factual circumstances of every application for a whistleblower award. But where the Commission receives an application for an award based on the submission of information leading to a significant and successful enforcement action by the Commission, and the applicant even points to examples of the Commission's past grants of such exemptions, it is not enough for the Commission to restate general policy goals underlying the requirements the applicant apparently failed to meet. *See BellSouth Corp. v. FCC*, 162 F.3d 1215, 1224–25 (D.C. Cir. 1999). The Commission did not address Doe's arguments that he submitted original information that led to its substantial enforcement success and that he cooperated with the Commission and other regulatory authorities, much less explain why Doe's request was less worthy of an award than others in which the Commission exercised its exemption authority. *Green Country Mobilephone, Inc. v. FCC*, 765 F.2d 235, 237–38 (D.C. Cir. 1985).

Accordingly, the court denies the petition in part and grants the petition in part, vacating the denial of Doe's request for exemptions and remanding the request to the Commission for reconsideration and an adequate explanation of its determination.